UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00337-H

JEFFREY FADEL,                                                                                        PLAINTIFF

V.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jeffrey Fadel, initially brought this suit against Nationwide Mutual Fire Insurance Company ("Nationwide Mutual" or "Defendant") and the U.S. Department of Homeland Security Federal Emergency Management Agency ("FEMA") after Nationwide Mutual denied his insurance claim for flood damage to his property. Fadel makes three claims: 1) breach of the insurance contract, 2) violation of the Kentucky Unfair Claims Settlement Practices Acts ("UCSPA"), and 3) negligent or intentional misrepresentations causing procurement fraud. After FEMA moved to dismiss the case for lack of jurisdiction or failure to state a claim, the parties stipulated to FEMA's release, so that the sole remaining defendant is Nationwide Mutual. Nationwide Mutual now moves to dismiss the entire case, or in the alternative, for a more definite statement on all claims against it.

The motion presents some difficult issues, particularly whether federal law preempts these state law claims. For the following reasons, Nationwide Mutual's motion to dismiss is sustained in part and denied in part, and its motion for a more definite statement is sustained.

I.

In 1968, Congress passed the National Flood Insurance Act ("NFIA") "to provide a unified national program to reduce and avoid losses due to flood [sic] by making reasonably priced flood insurance available for residential and commercial properties." *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002). The NFIA created the National Flood Insurance Program ("NFIP"), "a federally-subsidized program which provides flood insurance at below actuarial rates." *Berger v. Pierce*, 933 F.2d 393, 394 (6th Cir. 1991). As a result, the federal government filled a gap left by private insurance companies that could not write affordable flood insurance policies for private consumption.

The NFIA established two methods for enforcing the NFIA. For the first decade of the NFIA's operation, the government allowed private insurance companies to administer the program with little federal oversight. Subsequently, the government chose to utilize the second method, which called for more significant government oversight. Under the closer oversight, authority over NFIP shifted from the Department of Housing and Urban Development to FEMA, which then "had complete control of the payment or disallowance of all flood insurance claims." *Id*. at 395. The Flood Insurance Administration, a component of FEMA, actually administers the NFIP. *Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516, 519 (6th Cir. 2008).

FEMA promulgated the Standard Flood Insurance Policy ("SFIP"), which establishes the rights and responsibilities of the insurers and insureds under a flood insurance policy. Consumers have the option of purchasing a SFIP from the federal government directly or from private insurance companies known as "Write-Your-Own" carriers ("WYO"). *Muncy v. Selective Ins. Co. of Am.*, 2007 WL 2229224, at *1 (E.D. Ky. July 31, 2007). The WYOs merely act as fiscal agents of the United States. WYOs cannot alter the SFIP, and the U.S. Treasury remains the underwriter for the

SFIP. S*ee* 42 U.S.C. § 4017(d); 44 C.F.R. § 62.23(f). In this way, WYOs are simply a conduit through which citizens may purchase flood insurance, but premiums are still paid to and claims paid from the United States government coffers. *See* 42 U.S.C. § 4017(d).[1]

Here, Nationwide Mutual was a WYO that sold a SFIP to Plaintiff on March 22, 2011. Plaintiff paid the entire annual premium on that date. Plaintiff alleges that a Nationwide Mutual representative declared that the policy would go into effect the next day, March 23, 2011. The SFIP Application Form confirms this allegation, stating that the policy period was from "3/23/2011 TO 3/23/2012 12:01 am Local Time at the Insured Property Location."[2] This amounted to a one-day delay in the effective period of the policy. However, SFIP regulations clearly state that the effective date for new coverage under a SFIP policy is "12:01 a.m. (local time) on the 30th calendar day after the application date and the presentment of payment for premium." 44 C.F.R. § 61.11(c). This meant that under the SFIP regulation, the effective policy date was actually April 21, 2011.

On April 23, 2011, Plaintiff's property suffered damages from a flood. This was thirty-two days after Plaintiff signed the policy and thus outside the thirty-day regulatory delay. However, pursuant to the SFIP regulations, the SFIP does not insure "a loss directly or indirectly caused by a flood that is already in progress at the date and time: A. The policy begins; or B. Coverage is

---

[1] WYOs in turn receive a commission from the U.S. Treasury for policy issuance and for claim approval and payment authorization under a SFIP. That commission is calculated on a percentage basis, such that the WYOs receive a larger commission for larger insurance claim payouts, incentivizing the insurance companies to get people insured. *See* 44 C.F.R. Part 62, App. A, Art. III; *Scherz v. S.C. Ins. Co.*, 112 F.Supp. 2d 1000, 1004 (C.D. Cal. 2000).

[2] Federal regulations under the NFIA state that the application, or "[t]he statement made and signed by you or your agent in applying for this policy", "is part of this flood insurance policy." 44 C.F.R. Part 61, App'x A(1) Art. II(B)(3). Plaintiff attached the Application Form to the state court Complaint and referenced the Form in the Complaint, and the Application Form was also attached to Defendant's Notice of Removal. As such, this Court's considerations of the Application Form does not break the rule requiring motions to dismiss to consider only matters in the pleadings. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

added at your request." 44 C.F.R. Pt. 61, App. A(1), Art. V(B). The government argues that the "flood in progress" exclusion is applicable here, because the flood that damaged Plaintiff's property originated during the thirty-day regulatory delay period. Plaintiff argues the flood in progress exclusion does not apply, because the effective date of the policy was March 23, 2011, before the flooding began.[3]

Nationwide Mutual moves to dismiss all three counts (breach of contract, violation of the Kentucky UCSPA, and fraud in the procurement of the insurance contract) on grounds that each count is defectively pled and/or barred under the doctrine of preemption. A court must dismiss a claim under Fed. R. Civ. P. 12(b)(6) if the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Il. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). In so doing, "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all [] factual allegations as true." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). The "complaint must contain direct or inferential allegations respecting all the material elements under some viable theory." *Commercial Money Ctr.*, 508 F.3d at 336. If "a claim has been stated adequately" and has been "supported by showing any set of facts consistent with the allegations in the complaint", the court will deny the motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).

II.

In Count I of the Complaint, Plaintiff alleges that denial of coverage and benefits under his SFIP was a material breach of the terms and conditions of his insurance contract. Nationwide Mutual argues that Plaintiff failed to properly plead this claim for two principal reasons. The Court will consider each.

---

[3] Plaintiff does not make clear what relief he is actually seeking in his Complaint, but this analysis appears to be an estoppel argument. The Complaint also raises a number of issues such as causation and damages which the Court does not address here.

First, Nationwide Mutual asserts that Plaintiff failed to state in the Complaint that he complied with the SFIP requirements. However, Plaintiff does state that he signed the contract and paid the premiums as the SFIP requires, and in so doing, fulfilled his obligations under SFIP. Because Nationwide Mutual does not specify which other particular SFIP requirements were neglected, the Court concludes that Plaintiff's statements do satisfy the pleading requirement.

Second, Nationwide Mutual argues that Plaintiff failed to present a cognizable breach of contract claim in large part because Plaintiff did not present sufficient details about when the claim was denied. The Federal Rules only require "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))(internal quotation marks omitted); *see* Fed. R. Civ. P. 8(a). Plaintiff did state that he purchased a SFIP covering certain property, a flood damaged that property, and Nationwide Mutual denied benefits for the damages. A complaining party need not plead the specific dates of a sequence of events at issue, even if the date will determine when the statute of limitations on the claim begins to run. *See, e.g.*, *Dodd v. Dyke Indus. Inc.*, 2006 WL 2850660, at *2 (W.D. Ky. Oct. 3, 2006). Moreover, Nationwide Mutual should have the date of denial within its own records or could easily obtain that information through interrogatories or other discovery mechanisms.

To address these issues, however, Nationwide Mutual properly moved for a more definite statement under Fed. R. Civ. P. 12(e). The Court will grant the motion where a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Count I of Plaintiff's Complaint is ambiguous as to which contract provision Nationwide Mutual

breached and what relief Plaintiff is seeking as a result of that breach. Therefore, the Court will grant Nationwide Mutual's motion for a more definite statement.

Finally, Nationwide Mutual argues that Plaintiff's prayer for legal fees and punitive damages with regard to all counts in the Complaint must be dismissed to the extent those damages are related to the handling and disposition of claims. The Court will discuss these claims along with the larger preemption issues in Section III of this Memorandum.

III.

In Count II of the Complaint, Plaintiff alleges that Nationwide violated the Kentucky UCSPA by failing to promptly offer settlement for the value of the insurance claim and by attempting to extort a more favorable settlement. Nationwide Mutual counters that under the Supremacy Clause of the United States Constitution federal law is supreme to state law such that "state laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid." *Gibson*, 289 F.3d at 948 (quoting *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991))(internal quotation marks omitted). Nationwide Mutual argues that the NFIA preempts any Kentucky UCSPA claims.

Federal courts recognize three types of preemption. First, express preemption occurs when a federal statute expressly states that it preempts state law. Second, implied preemption occurs in one of three ways:

> if a scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it," if "the Act of Congress . . . touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or if the goals "sought to be obtained" and the "obligations imposed" reveal a purpose to preclude state authority.

*Id.* at 949 (quoting *Wis. Pub. Intervenor*, 501 U.S. at 605). Third, conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility." *Id.* at 949 (quoting *Fla. Lime & Avocado Growers, Inc .v. Paul*, 373 U.S. 132, 142-43 (1963)).

The Sixth Circuit has held that the NFIA preempts claims arising out of the handling and disposition of SFIP claims. *Id.* In the same opinion, the Sixth Circuit specifically addressed the Kentucky UCSPA, holding that the NFIA preempts SFIP claims brought under the UCSPA, either through implied or conflict preemption, because these claims inherently concern the handling and denial of coverage under the SFIP. *Id*. at 949-50. Following this precedent, the Court concludes that the NFIA preempts Plaintiff's UCSPA claims, and those claims are dismissed as a matter of law.

Similarly, Plaintiff's claims for attorney's fees and punitive damages fail as a matter of law on preemption grounds, because the NFIA, the controlling law, does not provide for attorney's fees or punitive damages. *See Evanoff v. Standard Fire Ins. Co.*, 2007 WL 1577744, at *4 (N.D. Ohio May 29, 2007). Accordingly, Plaintiff's claims in Count I for attorney's fees and punitive damages are dismissed insofar as they concern the handling and disposition of NFIA claims.

IV.

In Count III of the Complaint, Plaintiff asserts a state law tort claim for negligent or intentional misrepresentation causing fraud in the procurement of his insurance contract. Specifically, Plaintiff argues that Nationwide Mutual represented that the effective date of his policy was one day after the policy was signed, when regulatory guidelines unambiguously state that the policyholder must wait thirty days from the date the contract is signed and premium is paid for the policy to take effect. Plaintiff argues that Nationwide Mutual's false representation induced Plaintiff to sign the insurance contract with Nationwide Mutual. Nationwide Mutual argues that the

7

Court should dismiss this Count on preemption grounds, a complex issue that requires some attention.

A.

At the outset, Nationwide Mutual asserts that to the extent Count III alleges fraud pertaining to the handling or disposition of a SFIP claim, the NFIA preempts the state law challenge. As explained in the previous section, Nationwide Mutual is correct, but Plaintiff here is not arguing that those misrepresentations concerned the handling or disposition of his SFIP claim. Rather, Plaintiff is specifically pointing to the verbal representations, as confirmed on the SFIP Application Form, that the effective date for the policy was March 23, when in fact the policy legally became effective on April 21. Representatives of Nationwide Mutual made these statements prior to Plaintiff purchasing his flood insurance policy, at a time when he had no existing insurance contract to rely on or claims to handle.[4]

The most complex issue presented here is Nationwide Mutual's argument that procurement fraud claims are preempted in the same way as those for handling and disposition fraud claims. Most courts, including the Sixth Circuit, recognize an important distinction between these two types of fraud. *See Gibson*, 289 F.3d at 949-950. However, lower courts disagree as to whether procurement misrepresentations are actionable under a state law fraud claim or are preempted by the NFIA, and most circuit courts have not decided the issue. The Sixth Circuit expressly stated that it was "unnecessary for us to decide whether policy procurement type state law claims are

---

[4] As a corollary to this argument, Nationwide Mutual also contends that the facts involved in procuring Plaintiff's insurance contract derive from denial of the insurance claim, and therefore Plaintiff's claim is preempted under the NFIA as pertaining to the handling of SFIP claims. This argument misses Plaintiff's point. When a Nationwide Mutual representative speaks to a potential consumer about how the insurance policy operates, the facts surrounding that representation are completely divorced from what the SFIP actually covers. Therefore, the circumstances surrounding Plaintiff's procurement of a Nationwide Mutual flood insurance policy are not folded into the factual context of the actual operation of that policy and not preempted as derivative of the handling and disposition of claims.

8

preempted by NFIA." *Id.* No Sixth Circuit case since *Gibson* has addressed this issue, leaving this Court to examine legal precedent from other courts.

Nationwide Mutual points to many district courts that say the NFIA does preempt state law procurement fraud claims.[5] While these cases certainly have merit, the Court concludes that the better view is that NFIA does not preempt procurement fraud claims. The only federal appellate court to rule on this issue held that procurement claims are not preempted.[6] *See Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793 (5th Cir. 1993). Indeed, this appears to be the emerging trend among lower courts dealing with these claims.[7] For the reasons that follow, the Court is persuaded to follow this trend.

---

[5] *See Remund v. State Farm Fire & Cas. Co.*, 2010 WL 2025591, at *5 (D. Utah May 18, 2010) ("These two provisions, [44 C.F.R. 65.1(c) and 42 U.S.C. § 4081(c)], convince the court that state law claims relating to procurement are expressly preempted. . . . In the alternative, the court concludes that even were express preemption not to apply, Mr. Remund's state law claims would be precluded by conflict preemption."); *Moffett v. Computer Scis. Corp.*, 457 F.Supp. 2d 571, 586-87 (D.Md. 2006)(holding that procurement fraud is preempted because, 1) "[b]y bringing more types of WYO cases within the scope of the Arrangement [established in the NFIP between FEMA and private insurers] and hence the preemptive fold, FEMA is able to provide important protections and incentives to WYO's", 2) FEMA has expressed an interpretation of the NFIA to preempt procurement claims, an interpretation entitled to deference, and 3) the federal government may have to fund the legal defense of WYOs on these claims.).

[6] Recently, the Tenth Circuit reviewed a decision of a Utah district court that held procurement claims are preempted under the NFIA in *Remund v. State Farm Fire and Cas. Co.*, 2012 WL 1743094 (10th Cir. May 17, 2012). Instead of examining the issue as a product of the procurement-handling claims dichotomy, however, the Tenth Circuit compared Utah state law claims for estoppel and breach of warranty with the NFIA provisions and regulations to determine whether the NFIA preempted these claims through conflict preemption. While the Tenth Circuit's decision is well-reasoned and persuasive, this Court will confine itself to the analytical framework established in the Sixth Circuit's decision in *Gibson*, which directs the district courts to examine the distinction between procurement claims and handling claims in its NFIA preemption analysis.

[7] *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 758 (5th Cir. 2009)(holding that "state-law tort claims related to procurement do not interfere with Congress's objectives. Federal law thus does not preclude Campo from pursuing his procurement-based suit that asserts a state-law cause of action for Allstate's allegedly negligent misrepresentations."); *Reeder v. Nationwide Mut. Fire Ins. Co.*, 419 F.Supp. 2d 750, 763 (D.Md. 2006)(holding that "Plaintiffs' state law tort claims for negligence, intentional misrepresentation, negligent misrepresentation, fraud and deceit are not preempted by federal flood insurance law."); *Padalino v. Standard Fire Ins. Co.*, 616 F.Supp. 2d 538, 546 (E.D. Pa. 2008)("Neither express, field, nor conflict preemption supports the preemption by the NFIA of state law claims relating to SFIP procurement.").

B.

Initially, the Court recognizes two foundational legal precepts informing its decision in the present case. First, federal law recognizes a "presumption that Congress does not intend to supplant state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). This presumption is even more pronounced in areas traditionally regulated under state police power, such as insurance. *Reeder v. Nationwide Mut. Fire Ins. Co.*, 419 F.Supp. 2d 750, 761 (D. Md. 2006). Second, Congress expressly preempted state law handling-related claims, declaring that "[t]his policy and all disputes *arising from the handling* of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law." 44 C.F.R. Part 61, App. A(1), Art. IX (emphasis added). The Court agrees with the Fifth Circuit's reasoning in *Campo v. Allstate* that the Court should consider

> FEMA's "limited statement of preemption through the canon of statutory construction *inclusio unius est exclusio alterius*, indicating Congress' lack of interest in more broadly limiting state power." FEMA has expertise in drafting regulations that explicitly preempt state law, and yet in this instance it chose to confine the plain language of its preemption to handling.

*Campo*, 562 F.3d at 757-58 (quoting *United States v. 4,432 Mastercases of Cigarettes, More or Less*, 446 F.3d 1168, 1189-90 (9th Cir. 2006)(discussing preemption under the Foreign Trade Zone Act)). Congress' language must be considered deliberate and has the effect of limiting the NFIA's preemptive scope to only those state law claims dealing with the handling of SFIP insurance claims.

C.

The two principal arguments which support preemption are both weakened by a close reading of the SFIP regulations.

1.

Nationwide Mutual points to a provision of SFIP that states, "[R]epresentations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void." 44 C.F.R. § 61.5(e). Nationwide Mutual argues that any representations made by its employees are void to the extent that they conflict with the SFIP regulations.[8] In the Court's view, however, Nationwide Mutual overstates the effect of this regulation. The regulation merely evinces "an intent to prevent expansion of SFIP coverage through misrepresentations by private parties involved with the [NFIP], thereby protecting the government from expanded liability." *Padalino,* 616 F.Supp.2d at 545 (quoting *Spence,* 996 F.2d at 797). This regulation does not void misrepresentations as if they never existed, but rather provides that the federal government is not bound by them. In the Court's view, therefore, this regulation does not undermine the Fifth Circuit's reasoning.

2.

Second, many courts favoring preemption also consider how denying preemption affects the federal coffers. Under the liability indemnification provisions of the NFIA, the federal government will pay for certain losses resulting from litigation arising under the scope of the arrangement between FEMA and WYO carriers. Specifically, the statute directs the government to indemnify "any agent or broker selling or undertaking to sell flood insurance . . . from any judgment for damages against such agent or broker as a result of any court action by a policyholder or applicant arising out of an error or omission on the part of the Federal Emergency Management Agency." 42 U.S.C. § 4081(c). Arguing that any representation concerning how the SFIP operates is within the

---

[8]According to Nationwide Mutual, because the Application Form is part of the SFIP, representations concerning the application are part of SFIP, and void to the extent that they are not consistent with the NFIA.

11

scope of the arrangement between FEMA and WYO carriers and that the regulation purposefully included court actions by applicants, proponents of preemption maintain that Congress expressly contemplated and precluded procurement fraud claims when writing this indemnification provision.

This is certainly a reasonable argument, but not a conclusive one. A better reading of this statute suggests that the NFIA only indemnifies insurance brokers sued for issues arising from FEMA's actions, not for the negligence or intentional acts of brokers concerning the procurement of the insurance contract itself, a situation over which FEMA has little control. Moreover, the provision also clearly states, "The Administrator of the Federal Emergency Management Agency may *not* hold harmless or indemnify an agent or broker for his or her error or omission." 42 U.S.C. § 4081(c)(emphasis added). This provision demonstrates that "statutes issued under the NFIA and regulations promulgated by FEMA appear to contemplate negligence actions against WYO Companies." *Reeder*, 419 F.Supp. 2d at 761. The statutes also appear to clarify that "such costs will not be reimbursable to the WYO carrier." *Campo*, 562 F.3d at 754.

D.

Though the Court ultimately concludes that the NFIA does not preempt state procurement fraud claims, one must acknowledge some persuasive arguments to the contrary.

Defendant vigorously argues that this Court should not follow the *Spence* decision, because FEMA implicitly rejected the Fifth Circuit's reading of the NFIA regulations. FEMA responded to this decision by amending its regulations to declare that "state law fraud claims based on policy procurement were not 'outside the scope of the Arrangement'" and are therefore covered by the indemnity liability provisions. *Moffett*, 457 F.Supp. 2d at 587. Moreover, after the Fifth Circuit rendered the *Campo* decision, which essentially upheld the *Spence* decision, FEMA issued Bulletin

W-09038 stating that "preemption should apply to the nationally uniform and FEMA-mandated processes governing policy issuance and the administration of existing flood policies, including but not limited to rating, renewal, transfer, non-renewal, cancellation, or reformation." *Remund*, 2010 WL 2025591, at *3.

FEMA may well have its own view of the governing statute and its proper interpretation. However, the Court must merely consider that view along with others which have attempted to find clarity amid the confusion of preemption. In this area of the law, the Court does not find FEMA's pronouncements entitled to any special deference nor necessarily more creditable than the Fifth Circuit Court of Appeals.

With all due respect to contrary arguments, the Court holds that the NFIA does not preempt procurement fraud claims, and Nationwide Mutual is not entitled to dismissal of Count III of Plaintiff's Complaint on preemption grounds.

V.

The second ground upon which Nationwide Mutual contends Count III should be dismissed is for failing to meet federal pleading requirements. Under Fed. R. Civ. P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." The plaintiff achieves a satisfactory degree of specificity when "the complaint places the defendant on 'sufficient notice of the misrepresentation,' allowing the defendants to 'answer, addressing in an informed way plaintiffs [sic] claim of fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)(quoting *Brewer v. Monsanto Corp.*, 644 F.Supp. 1267, 1273 (M.D. Tenn. 1986)). Accordingly, a plaintiff must allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."

13

*Id.* at 161-62 (quoting *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D. Mich. 1992)). However, "absolute precision is not necessarily needed." *Woodland Harvesting, Inc. v. Ga. Pac. Corp.*, 693 F.Supp. 2d 732, 739 (E.D. Mich. 2010).

The Court concludes that Plaintiff's Complaint meets Fed. R. Civ. P. 9(b) requirements. Plaintiff put Nationwide Mutual on notice of the relevant timeframe for the alleged misrepresentations by presenting the date when the insurance contract formed. Plaintiff asserted that the Nationwide Mutual representative told Plaintiff, as indicated on the Application Form, that the policy period was to begin the following day, and that this statement induced Plaintiff to purchase the insurance. Plaintiff explained why the misrepresentation was false and alleged that Nationwide Mutual possessed the requisite mental state for the fraudulent conduct. Finally, Plaintiff postulated that Nationwide Mutual's actions caused harm because Nationwide Mutual denied his insurance claim. Based on this information, Nationwide Mutual has sufficient notice of the fraud claim to answer and address this claim accordingly.

Nationwide Mutual argues that if Plaintiff had more specifically pled the fraud claim, perhaps those facts would present additional defenses, such as preemption or misrepresentations pertaining to future promises, which may not be cognizable under Kentucky law. Nationwide Mutual's presentation of hypothetical defenses is not persuasive enough to warrant the rather harsh conclusion that Plaintiff's entire claim for relief on the fraud tort should be dismissed for failure to state a claim. With more discovery, Nationwide Mutual can flesh out the factual circumstances supporting Plaintiff's claims and present these defenses in proper motions. Therefore, denying Nationwide Mutual's motion to dismiss will not prejudice Nationwide Mutual in any serious way.

The proper way to handle the insufficiency of Plaintiff's pleading is through Nationwide Mutual's motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e), under which a Court may "insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish [the claim] in order to survive a prediscovery motion for dismissal or summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991)(Kennedy, J., concurring)). Because this Court agrees that Nationwide Mutual could more adequately respond to Count III if Plaintiff provided a more definite statement of the claim he is pursuing, the Court will grant Defendant's motion for a more definite statement.

## VI.

Finally, Plaintiff seeks leave to amend his Complaint to add as a defendant David Will, the actor responsible for the alleged misrepresentations, and to mend preemption problems with Count II.[9] According to Fed. R. Civ. P. 15(a)(2), federal courts "should freely give leave [to amend] when justice so requires." However, the court will deny the motion "if the amendment . . . would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). An amendment is futile if it could not overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). The Court denies the motion for leave to amend on two grounds.

First, the Court fails to see the value in allowing Plaintiff to amend Count II of his Complaint because the NFIA will continue to preempt any restated Kentucky UCSPA claims. Any amendment Plaintiff presents, including one that simply adds Nationwide Mutual's agent as a

---

[9] It is unclear from Plaintiff's Response whether he is requesting leave to amend both to correct problems with Count II and to add David Will as a defendant, or if adding David Will as a Defendant will mend the problems to Count II. This Court will treat the motion for leave to amend as a motion both to amend Count II and to add David Will as a defendant, to cover both situations.

15

defendant, would fail as a matter of law and therefore not withstand a motion to dismiss, because the agent's actions are attributable to the principal. However, Plaintiff's amendment may not fail as a matter of law if Nationwide Mutual's agent was in fact an independent insurance broker that sold insurance for a number of insurance carriers. This segways into the second reason why the motion is denied.

Motions for leave to amend under Fed. R. Civ. P. 15(a) must "state with particularity the grounds therefor" in accordance with Fed. R. Civ. P. 7(b). *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006). As in *Evans*, Plaintiff here summarily requested leave to amend without explaining how the amendments would actually fix a problem in the Complaint or protect Plaintiff's rights any further than the present Complaint. *Id.* (holding that "the district court did not abuse its discretion by denying Evans' first request for leave to amend her complaint because she failed to state the grounds for relief with particularity.") In his motion, Plaintiff does not state any facts suggesting in what capacity David Will operated, what amendments Plaintiff proffers to make, and how the amendment will correct the deficiencies of Plaintiff's Complaint. Therefore, the Court must deny Plaintiff's request for leave to amend his Complaint for failing to assert with particularity the grounds for granting the motion.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant Nationwide Mutual's motion to dismiss is SUSTAINED as to Count II of Plaintiff's Complaint and that claim is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant Nationwide Mutual's motion to dismiss is DENIED as to Count I and Count III of Plaintiff's Complaint.

IT IS FURTHER ORDERED that Defendant Nationwide Mutual's motion for a more definite statement is SUSTAINED.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to amend his Complaint is DENIED.

cc: Counsel of Record